IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MASTER INTERNATIONAL CO. LTD.** *et al.*, | * | |
| | * | |
|   **Plaintiffs** | * | |
|     v. | * | CIVIL No. 12-cv-3758-JKB |
| | * | |
| **BLACKSTONE INTERNATIONAL, LTD.** *et al.*, | * | |
| | * | |
|   **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Master International Co. Ltd. and HwaJan International Lighting Ltd. ("Plaintiffs") brought this suit against Blackstone International, Ltd. ("Blackstone") and John F. Black ("Defendants") asserting claims for breach of contract, account stated, unjust enrichment, *quantum meruit*, detrimental reliance, fraud, fraudulent misrepresentation, fraudulent inducement, tortious interference with prospective advantage and violations of other provisions of Maryland law. Now pending before the Court is Defendants' motion to dismiss the complaint and for a more definite statement (ECF No. 16). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Defendants' motion to dismiss the complaint and for a more definite statement will be DENIED.

### I.    BACKGROUND[1]

Master International "is a foreign company organized and existing under the laws of Brunei, with its principal place of business located in [Brunei]." (Compl. ¶ 2.) HwaJan

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

International Lighting "is a foreign company organized under the laws of China, with its principal place of business located in [China]." (*Id.* ¶ 3.) Plaintiffs are "family owned and operated export businesses, [which] have developed an international reputation specializing in the manufacture and shipment of a wide-variety [*sic*] of lighting and mirror products." (*Id.* ¶ 9.)

Blackstone "is a corporation duly organized and existing under the laws of the State [of] Maryland, with its principal place of business" in Baltimore, Maryland. (*Id.* ¶ 4.) John Black is Blackstone's president and a resident of Phoenix, Maryland. (*Id.* ¶ 5.) Blackstone acted as "a distributor of products manufactured . . . by Plaintiffs . . . to retail companies in the United States. (*Id.* ¶ 10.)

During 2010 and 2011, Plaintiffs designed, manufactured and shipped custom-built lighting and mirror products at Defendants' request, pursuant to a series of purchase orders. (*Id.* ¶¶ 9, 11.) Plaintiffs allege that Defendants have failed to pay Plaintiffs money to which they are entitled under some of those purchase orders. (*Id.* ¶ 11.) In Exhibit A to the complaint, Plaintiffs list 96 outstanding invoices, totaling $4,714,820, that they sent to Blackstone "following shipment of the goods in accordance with the [purchase order] terms." Plaintiffs allege that under the terms of their agreement, "payment for the full amount of the goods delivered to Blackstone was due within 30 days." (*Id.* ¶ 13.) For each outstanding invoice, Plaintiffs identify the Blackstone purchase order number, payment due date and remaining balance. (*Id.* Ex. A.)

Plaintiffs allege that Blackstone has received payments from the retailers for the goods they delivered, despite Defendants' statements to the contrary, which were made "in an effort to conceal from Plaintiffs that Defendants have, in essence, pocketed millions of dollars that belong to Plaintiffs." (Compl. ¶ 15.) Plaintiffs further allege that "Defendants' conduct herein is part of a regular course of fraudulent conduct," through which Defendants manipulate and defraud

foreign manufacturers. (*Id.* ¶ 16.) "As part of Defendants' scheme, on multiple occasions Black promised to remit to Plaintiffs large sums of money [as] payments [for] previously manufactured and shipped goods by a date certain, to induce Plaintiffs to continue to manufacture and ship goods for Blackstone." (*Id.* ¶ 19.)

Plaintiffs allege that, during "a November 2, 2011 conference call between Black and Plaintiffs' representatives, Black promised Plaintiffs a $1.5 million payment before November 20, 2011." (*Id.* ¶ 21.) "Relying on Black's promise . . . Plaintiffs shipped an additional [quantity] of goods . . . for which, to date, Blackstone has failed to make any payment." (*Id.*) According to the complaint, "Black made the promise knowing, at the time, that Blackstone had no intention of making the $1.5 million payment, and that his representation would induce Plaintiffs into shipping more goods for Blackstone." (*Id.*)

Separately, Plaintiffs allege that in April 2010, Black suggested that the parties should agree "on a large order for thousands of vanity floor and desk-side lamps and other custom-made products (the 'Large Order') for Wal-Mart." (*Id.* ¶ 23.) "Black represented that once Plaintiffs manufactured and shipped the Large Order for Blackstone, Plaintiffs would be paid for all outstanding invoice payments." (*Id.*) In April 2010, Blackstone sent Plaintiffs ten purchase orders concerning this Large Order, and Plaintiffs began the time-consuming process of manufacturing the custom goods. (*Id.* ¶¶ 23-24.) Due to a problem with Wal-Mart's internal ordering issues, Plaintiffs were forced to delay the shipment date for some portion of the custom goods. (*Id.* ¶¶ 25-26.) At some point during this process, Plaintiffs concluded that they had very little chance of receiving payment from Defendants for the goods that they had already shipped. (*Id.* ¶ 26.) Plaintiffs decided not to deliver the balance of the Large Order, and they have

3

$5,466,522 worth of custom-made goods warehoused in China which they have been unable to sell to other buyers. (*Id.* ¶ 27.)

In order to manufacture goods, Plaintiffs must purchase raw materials from vendors. (*Id.* ¶ 9.) During the course of their relationship with Defendants, Plaintiffs were in a "precarious financial position," which was exacerbated by Defendants' failure to pay Plaintiffs for the goods they manufactured. (*Id.* ¶ 19.) Plaintiffs allege that their "relationships with [] suppliers ha[ve] been destroyed due to Plaintiffs' inability to make payments to their suppliers for goods ordered by Defendants." (*Id.* ¶ 29.) "Defendants were well aware of Plaintiffs' supplier issues because Plaintiffs repeatedly expressed concerns that Defendants' failure to pay Plaintiffs would directly cause material disruption and business interference with Plaintiffs' suppliers." (*Id.* ¶ 30.)

"Defendants' actions also irreparably harmed Plaintiffs' standing and credibility with Wal-Mart and Costco." (*Id.* ¶ 31.) They did this by falsely blaming Plaintiffs for failures of quality and timeliness, "disparag[ing] Plaintiffs to Wal-Mart employees," and misleading Costco about Plaintiffs' financial condition and product quality. (*Id.* ¶¶ 31, 33, 35.) Plaintiffs allege that this has "irreparably tarnished" Plaintiffs' relationship with the retailers.

## II.  LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007). In assessing the merits of a motion to dismiss, the court must take all

well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

### III. ANALYSIS

#### A. Breach of Contract and Related Claims

The complaint asserts a cause of action for breach of contract against Blackstone (Count I), which Defendants did not move to dismiss. In Count II, the complaint asserts a cause of action against Blackstone for account stated. Under Maryland law[2], a claim for account stated has the following elements: (1) a previous transaction between the parties giving rise to the indebtedness from one to the other; (2) a rendition of an account to the party sought to be charged reciting the amount of the existing debt; and (3) a promise, express or implied, to pay this balance. *Patterson, Belknap, Webb & Tyler v. LaRosa*, 28 F.3d 1210 (Table) (4th Cir. 1994). "[F]ailure to object to the correctness of the stated amounts and continued acceptance of . . . services for [] a long period of time constitutes an implied agreement to pay the stated account." *Id.*[3]

Defendants argue that the complaint fails to allege facts to support the third element. Although the complaint does not specifically state that Defendants failed to object to the invoices

---

[2] The parties did not address the relevant source of substantive law in this case. However, both parties based their arguments on the assumption that Maryland law governs their dispute, so the Court will apply that law.

[3] Defendants cite *Mycosafe Diagnostics GMBH v. Life Tech. Corp.*, No. 12 Civ. 2842 (DKC), DE# 10 (D. Md. Jan. 11, 2013), explaining that in that case, the "defendant never agreed to pay the total of the invoices and therefore summary judgment in defendant's favor was appropriate." (Def. Br. at 27.) The Court assumes that Defendants meant to cite a different case, because they have flatly misstated the holding of *Mycosafe*. In *Mycosafe*, the court held that it did not have personal jurisdiction over the defendants; it did not grant summary judgment for defendants on the account stated claim.

5

within a reasonable period of time, the factual allegations are sufficient to support this element. Plaintiffs allege that they delivered each of the invoices to Defendants and, "[b]y agreement of the Parties, payment for the full amount of the goods delivered to Blackstone was due within 30 days." (Compl. ¶ 13.) The complaint further alleges that Black promised on multiple occasions to pay for "previously manufactured and shipped goods by a date certain." (*See id.* ¶¶ 19-21, 23.) These allegations support the inference that Defendants agreed to pay at least some of the invoices and did not object to the stated amounts. Therefore, the Court will not dismiss Count II.

In Count III, the complaint asserts a cause of action against Blackstone for unjust enrichment. In Count IV, the complaint asserts a cause of action against Blackstone for *quantum meruit*. Defendants argue that both of these claims should be dismissed because a written contract governs the dispute. Under Maryland law, it is generally true that a quasi-contract claim "may not be brought where the subject matter of the claim is covered by an express contract between the parties." *See Janusz v. Gilliam*, 947 A.2d 560, 567 (Md. 2008) (internal citations and quotation marks omitted). However, Defendants acknowledge that Plaintiffs are "not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." (Def. Br. at 25, ECF No. 16-2 (quoting cases).)

Defendants then argue that the claims should be dismissed because Plaintiffs "concede[] the existence of purchase orders," and since Plaintiffs "did not attach a sample purchase order to the Complaint it is impossible to determine if there will be a dispute as to the terms of the contract." (*Id.* at 25-26.) This argument reflects a misunderstanding of the requirements of notice pleading and the standard for a motion to dismiss. Plaintiffs had no obligation to attach copies of the contracts to the complaint, and they were not required to present evidence in their pleadings to prove the truth of their allegations. Rather, Defendants have the burden of

establishing that Plaintiffs' allegations fail to support a claim for which relief can be granted. Given the procedural posture of the case, Defendants' argument that it is "impossible to determine" whether the parties will dispute the terms of the relevant contracts is an indication that Defendants might—in the future—dispute the terms of the contracts. For that reason, Defendants have not carried their burden of demonstrating the existence of a contract *concerning the subject matter at issue in this case*. Therefore, the Court will not dismiss Counts III and IV.

### B. Fraud and Related Claims

In Count VI, the complaint asserts a claim against Black for fraud. Under Maryland law, the elements of a fraud claim are (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation. *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). Defendants argue that Plaintiffs have failed to identify with the requisite particularity any misrepresentations made by Defendants and that Plaintiffs could not have reasonably relied on the allegedly false statements.

Under FED. R. CIV. P. 9(b), "a party must state with particularity the circumstances constituting fraud." The complaint must identify with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 (2d ed. 1990)). Plaintiffs identify statements made "on or about

July 5, 2010" and on November 2, 2011 as the assertions on which they relied to their detriment.[4] (Compl. ¶ 59.)

Plaintiffs' description of the July 5, 2010 statement is not sufficiently particular to meet the requirements of Rule 9(b). The complaint does not describe the substance of the July 5, 2010 statement or how it was conveyed to Plaintiffs.[5] Therefore, this statement is not sufficiently particular to support a fraud claim.

Plaintiffs' allegations about the November 2, 2011 statement are sufficiently particular to support a fraud claim. Plaintiffs allege that "in a November 2, 2011 conference call between Black and Plaintiffs' representatives, Black promised Plaintiffs a $1.5 million payment before November 20, 2011. Relying on Black's promise . . . Plaintiffs shipped an additional [quantity] of goods." (Compl. ¶ 21.) Plaintiffs further allege that "Black made this promise knowing, at the time, that Blackstone had no intention of making the $1.5 million payment, and that his representation would induce Plaintiffs into shipping more goods for Blackstone." (*Id.*)

Plaintiffs allege that they shipped additional goods to Defendants pursuant to an existing contract—which is to say, they continued performing under that contract despite not receiving payment—in reliance on the November 2 statement. Defendants argue that Plaintiffs cannot

---

[4] Plaintiffs allege in the same paragraph that their fraud claim relies on "false representations of . . . nonpayment by Costco and Wal-Mart" as a result of quality control issues. (Compl. ¶ 59.) The theory is apparently that Plaintiffs relied on these false statements by not insisting that Defendants pay them for the products at issue. However, these general allegations are not sufficiently particular to support a fraud claim, because Plaintiffs do not allege who made them or when they were made. (*See, e.g.*, *id.* ¶¶ 15, 17, 18.) Plaintiffs identify only one specific communication concerning Costco or Wal-Mart with sufficient particularity: a July 13, 2010 email in which Black says he is committed to Plaintiffs and refers to surviving the difficult situation in which Wal-Mart has put Plaintiffs and Defendants. (Compl. ¶ 20.) However, this statement is not a representation of material fact on which Plaintiffs could have relied.

[5] If the July 5, 2010 statement is the same as the statement "in early July 2010 [in which] Black promised to provide Plaintiffs between $1.2 and $1.5 million in an effort to temporarily appease Plaintiffs . . . and induce them to continue manufacturing and shipping goods for Blackstone," this allegation is still not sufficiently particular to support a fraud claim. (Compl. ¶ 20.) The complaint does not allege how the statement was conveyed to Plaintiffs, and the assertion in Plaintiffs' brief that it was made in an "email/phone call" (*see* Pl. Br. at 15) is both confusing and not supported by allegations in the complaint.

8

have reasonably relied on the November 2 statement for two reasons. First, Defendants argue that it was not a statement of material fact, but rather a promissory statement, which cannot form the basis for a fraud claim. However, while it is true that "fraud cannot be predicated on statements that are merely promissory in nature, or upon expressions as to what will happen in the future . . . the existing intention of a party at the time of contracting is a matter of fact and fraud may be predicated on promises made with a present intention not to perform them." *Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. 1992) (internal citations and quotation marks omitted); *see also Hale Trucks of Md., LLC v. Volvo Trucks N.A., Inc.*, 224 F. Supp. 2d 1010, 1032 (D. Md. 2002) ("a deliberate misrepresentation of one's existing intentions, where the misrepresentation is material, 'may form the basis for an action in fraud or deceit'" (citing *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1048 (Md. 1995))). Plaintiffs allege that Black knew his statement was false at the time he made it. That allegation is bolstered by Plaintiffs' allegations about Defendants' course of dealings with Plaintiffs and other similar businesses. *See Aloi v. Moroso Inv. Partners, LLC*, No. 11 Civ. 2591 (DKC), 2012 WL 4341741, *5 (D. Md. Sept. 20, 2012).

Second, Defendants argue that Plaintiffs could not have reasonably relied on Defendants' November 2 promise to pay because Defendants had already demonstrated themselves to be "habitual non-payers." In this case, whether reliance on such promises was reasonable in light of past experience is an issue of fact that is not appropriate for resolution at this stage.[6] *See 200 North Gilmor, LLC v. Capital One Nat'l Assoc.*, 863 F. Supp. 2d 480, 491 (D. Md. 2012). It is

---

[6] Defendants also argue that it is unreasonable as a matter of law for a sophisticated business entity to rely on an oral promise that contradicts a written contract. However, this case is distinguishable from Defendants' case law. In this case, Plaintiffs allege that they relied on Defendants' promise *to honor* their obligations under the contracts at issue, not a promise that contradicted the contracts. Whether Plaintiffs' reliance in this case was reasonable is a fact-specific inquiry.

for the fact finder in this case to determine whether and at what point in the parties' relationship Defendants had broken enough promises that future promises could no longer induce reasonable reliance. Therefore, the Court will not dismiss Count VI.[7]

In the alternative, Plaintiffs assert claims for fraudulent misrepresentation (Count VII) and fraudulent inducement (Count VIII). Under Maryland law, claims for fraud, fraudulent misrepresentation and fraudulent inducement can be pled in the alternative. *See, e.g., CapitalSource Fin., LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655, 666-67 (D. Md. 2009). Defendants have not raised any specific objections to the claims for fraudulent inducement and fraudulent misrepresentation that are not addressed above. Therefore, the Court will not dismiss Counts VII and VIII.

In Count V, the complaint asserts a cause of action against Black for detrimental reliance. The parties agree that in order to state a claim for detrimental reliance under Maryland law, Plaintiffs must allege (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise. *Konover Prop. Trust, Inc. v. WHE Assoc's, Inc.*, 790 A.2d 720, 724 (Md. Ct. Spec. App. 2002) (citing *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 674 A.2d 521 (Md. 1996)).

Defendants argue that Plaintiffs have failed to plead facts to support the first element of this claim because they "fail to allege any clear and definite promises not encompassed by the 96

---

[7] Defendants argue that the Court should strike Plaintiffs' prayer for punitive damages in connection with the fraud claims. However, in Maryland, alleging that the defendant intentionally misrepresented a material fact is generally sufficient to plead a basis for punitive damages as a remedy for fraud. *Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1126 (Md. 1995) ("the elements of the tort of fraud or deceit in Maryland, where the tort is committed by a defendant who knows that his representation is false, include the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages"). Plaintiffs' fraud claim survives this motion to dismiss because the complaint alleges that Black knew that the November 2 statement was false when he made it. Therefore, the Court will not strike the prayer for punitive damages.

purchase orders." (Def. Br. at 26.) This argument fails because Defendants have offered no authority to support the proposition that Plaintiffs cannot plead in the alternative their claims for breach of contract and detrimental reliance, and Defendants have ignored Black's November 2 statement, as discussed above. Defendants' arguments about the unreasonable nature of Plaintiffs' reliance and Plaintiffs' failure to "substantiate" their claims are identical to those rejected above. Therefore, the Court will not dismiss Count V.

### C. Tortious Interference with a Prospective Advantage

In Count IX, the complaint asserts a cause of action against Blackstone for tortious interference with a prospective advantage. Plaintiffs allege that Defendants intentionally and willfully "sabotaged Plaintiffs' longstanding relationships with its local Chinese suppliers, as well as destroying its standing and credibility with Wal-Mart and Costco. (Compl. ¶ 68.) In order to state a claim for tortious interference with a prospective advantage, Plaintiffs must allege (1) an intentional and willful act; (2) calculated to cause damage to Plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of Defendants; and (4) that caused actual damage or loss. *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 398 (D. Md. 2011).

Plaintiffs' allegations that Defendants "sabotaged" the relationships between Plaintiffs and their Chinese suppliers do not support a claim for which relief can be granted. Plaintiffs allege that Defendants were aware of Plaintiffs' precarious financial position and of Plaintiffs' "supplier issues," including Plaintiffs' inability to pay the suppliers on time. (Compl. ¶¶ 29-30.) In the light most favorable to Plaintiffs' claims, the complaint also suggests that Defendants intended to strain these relationships for the purpose of destroying Plaintiffs' ability to manufacture and deliver goods to retailers. (*See* Compl. ¶ 38.) However, this assertion is not

supported by sufficient factual allegations to render it plausible. Plaintiffs do not explain how destroying these relationships would benefit Defendants. Instead, the complaint suggests an alternative and much more plausible motivation: "Defendants used the knowledge of Plaintiffs' financial strain to induce Plaintiffs' [*sic*] into relying on Defendants' false promises." (*Id.* ¶ 30.) Therefore, Plaintiffs have not alleged sufficient facts to support the inference that Defendants' late payments were "calculated" to damage Plaintiffs' relationships with their Chinese suppliers and done for that purpose.

However, Plaintiffs have plausibly alleged that Defendants tortuously interfered with their relationships with Wal-Mart and Costco. This theory is supported by factual allegations in the complaint, including that Defendants told the retailers that Plaintiffs were to blame for failings of quality and timeliness. (Compl. ¶ 31.) Defendants argue that this allegation is "deficient in particularity [and] foundation," by which they appear to mean that the complaint "points to no specific communications whereby these [alleged statements] were made or to whom they were made." (Def. Br. at 22.) Again, this argument reflects a misunderstanding of the requirements of Rule 8.[8] Tortious interference is not a fraud-based claim, so Rule 9(b) is not applicable. Therefore, the Court will not dismiss Count IX.

### D. Defendants' Motion for a More Definite Statement

Under FED. R. CIV. P. 12(e), a "party may move for a more definite statement of a pleading . . . [that] is so vague or ambiguous that a party cannot reasonably prepare a response." Defendants raise three arguments in support of their motion for a more definite statement. First,

---

[8] Defendants also argue that Plaintiffs have not identified "a pending contract for sale, alternative distribution agreement, potential customer or other avenue of commerce that Defendants allegedly interfered with." Defendants have cited no authority for the proposition that Plaintiffs are required to make such allegations, so the Court will not address this argument.

they argue that the complaint does not proceed in chronological order or other logical progression. This is true, but the complaint is divided into several different sections, each of which is perfectly intelligible and proceeds in a logical progression. Second, they argue that Plaintiffs did not attach "a single purchase order, contract or term sheet to the complaint." This is also true, but the argument reflects a misunderstanding of the notice pleading standard. Plaintiffs have provided in Exhibit A to the complaint a full chart of 96 invoices at issue in this case, the corresponding Blackstone purchase order numbers, payment due dates and remaining balances. That chart contains sufficient information to put Defendants on notice of the claims against them. Third, Defendants argue that the complaint should be rewritten and narrowed if the court dismisses Counts II through IX. In light of the rulings above, the Court need not address this argument.

Defendants also complain that it is not clear which Defendant each claim is asserted against. The Court is sympathetic because the body of the complaint is less than precise on this front. (*See, e.g.*, Compl. ¶¶ 56, 59, 60, 68, 69.) However, in the "Prayer For Relief" section, the complaint specifically identifies the Defendant against which Plaintiffs seek judgment for each claim. These requests for judgment against particular Defendants are sufficient to clarify the instances of ambiguity in the body of the complaint.[9]

---

[9] The Prayer For Relief states that Plaintiffs seek judgment against Black for Count IV, the *quantum meruit* claim. If that were Plaintiffs' intention, it would alter the relevant analysis above. However, several factors suggest that this statement is merely a typographical error. First, the amount of damages sought for Count IV in the Prayer For Relief is not consistent with the body of the complaint. (*See* Compl. ¶ 54.) Second, the amount of damages sought in the Prayer For Relief is not consistent with the substance of Plaintiffs' contract-related allegations. Third, the section of the complaint that sets out Count IV unambiguously identifies Blackstone as the responsible party. (*See* Compl. ¶¶ 51-54.) Given this context, the Court interprets the complaint to seek judgment for Count IV against Blackstone in the amount of $4,714,820.

## IV. ORDER

Accordingly, it is ORDERED that Defendants' motion to dismiss the complaint and for a more definite statement (ECF No. 16) is DENIED.

Dated this 18th day of June, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge
